**MIGLIACCIO & RATHOD LLP**
Nicholas Migliaccio, *pro hac vice* forthcoming
Jason Rathod, *pro hac vice* forthcoming
Esfand Nafisi (State Bar No. 320119)
388 Market St.
Suite 1300
San Francisco, CA 94111
Telephone: (415) 489-7004
Facsimile: (202) 800-2730

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN KOU, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>APPLE, INC.,<br><br>    Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>for:<br><br>(1) Violations of California Consumer Legal Remedies Act<br>(2) Violations of California Unfair Competition Law<br>(3) Violations of California False Advertising Law<br>(4) Breach of Express Warranty under the Song-Beverly Consumer Warranty Act<br>(5) Breach of Express Warranty<br>(6) Breach of Express Warranty under the Magnuson-Moss Warranty Act<br>(7) Breach of Implied Warranty under the Song-Beverly Consumer Warranty Act<br>(8) Breach of Implied Warranty<br>(9) Breach of Implied Warranty under the Magnuson-Moss Warranty Act<br>(10) Fraud by Concealment<br>(11) Unjust Enrichment<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT - 1

1.    Plaintiff Kevin Kou brings this consumer class action on behalf of himself and all persons who purchased in the United States an Apple laptop containing keyboards with butterfly mechanisms (the "Keyboards").

2.    The following Apple laptops contain the Keyboards:

- 12" MacBook, 2015—2018;
- 13" MacBook Pro with TouchBar, model years 2016—2018;
- 13" MacBook Pro without TouchBar, model years 2016—2018; and
- 15" MacBook Pro with TouchBar, model years 2016—2018 (the "Class Laptops").

3.    This action seeks to remedy violations of law in connection with Apple's design, manufacture, marketing, advertising, selling, warranting and servicing of the Class Laptops and their defective Keyboards.

4.    Though the Class Laptops contain three iterations of the Keyboards, each iteration suffers from the same fundamental defect in that the Keyboards' internal components are unshielded from contaminants, like dust, which can cause failure of the Keyboards' delicate internal components, leading to: failures to register key presses, the registering of ghost key presses, keys getting stuck, or alterations to the tactile response of the keys (the "Keyboard Defect"). Failures from the Keyboard Defect are recurrent, arise through no fault of the user, and often cause permanent failures of the key, rendering the Keyboard and the Class Laptop unsuited for their ordinary use of retrieving and inputting data.

5.    When Plaintiff and Class Members complain to Apple during the term of Apple's one-year limited warranty, Apple's "solution" typically involves removing the defective Keyboard and installing an equally defective replacement. When the Keyboards fail outside of the warranty, Apple charges up to $700 for a Keyboard replacement, which is a temporary fix at best.

6.    The Keyboard Defect inhibits Class Members' use of their Laptops and requires Class Members to pay for repeated temporary fixes or extended warranties, which Apple knew or should have known are not permanent solutions for the Keyboard Defect.

CLASS ACTION COMPLAINT - 2

7.     Apple's knowledge of the defect was or should have been apparent from Apple's own pre-release testing, consumer complaints, warranty claim data, repair data, replacement part sales data, and a patent application filed by Apple months before the release of the MacBook Pro Class Laptops, which constitute the overwhelming majority of the Class Laptops. The patent relates to designs for, inter alia: (1) preventing the ingress of contaminants into the Keyboards' internal components, (2) providing a method of egress for contaminants that find their way beneath the keycap, (3) methods for pulverizing contaminants that enter the space between the Keyboard and the keycap. Despite this knowledge, Apple failed to disclose and actively concealed the Keyboard Defect from Plaintiff, Class Members and the public, and continued to market and advertise the Class Laptops and their Keyboards as "precise," "sturdy," "more responsive," "accurate," "the ultimate tool for every trade," and suitable for use by professionals, which they are not.

8.     As a result of Apple's misconduct, Plaintiff and Class Members were harmed and suffered actual damages, including that the Class Laptops contain defective Keyboards, have manifested and continue to manifest the Keyboard Defect, and that Apple has not provided a permanent remedy for the Keyboard Defect. Plaintiff and Class Members have also incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses related to the Keyboard Defect.

## PARTIES

9.     Plaintiff Kevin Kou is a citizen of California residing in Baldwin Park, California.

10.     On January 23, 2017, Kou ordered from Apple's website a 2016 15" MacBook Pro with TouchBar for $2,609, which was delivered to Kou three weeks later.

11.     Prior to purchasing his Laptop, Kou read and relied upon Apple's marketing materials concerning the Laptop on Apple's website.

12.     Within a few months of receiving his laptop, the keyboard began to malfunction by failing to register keystrokes or registering keystrokes where none had occurred. Also, the tactile response of some of the keys changed, such that the keys' movement felt sticky and emitted odd noises, particularly when the computer grew hot from use.

13.     On May 27, 2017, Kou sought warranty service from Apple. Apple repaired Kou's Laptop under the warranty within a week but nothing was fixed.

14. Weeks later, Kou again sought warranty service from Apple, and on July 5, 2017, Apple returned Kou's purportedly repaired Laptop to him.

15. On October 28, 2017, Kou, concerned about the durability of his Laptop, purchased an AppleCare extended warranty for $319.

16. On March 23, 2018, Kou again sought warranty service for his laptop's keyboard. Apple's second attempt at repairing the Keyboard fared no better than its first. Yet, Kou's laptop has continued to consistently manifest symptoms of the Keyboard Defect. Because he is preparing for finals in college and requires his laptop for schoolwork, Kou is presently unable to take his Laptop to Apple for repairs.

17. As a result of the Keyboard Defect, Kou has spent dozens of hours traveling to and from Apple stores, conversing with Apple's warranty department via email, or attempting to repair stuck or temporarily stuck keys. To date, his Laptop has spent approximately nearly a month in Apple's possession for warranty repairs.

18. Defendant Apple, Inc. is a California corporation with its principal place of business at One Infinite Loop, Cupertino, California.

19. Apple designs, manufactures, markets, advertises, sells, distributes, and warrants laptops, other personal computing products, smartphones, and accessories.

## JURISDICTION AND VENUE

20. This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this case includes claims arising under federal law. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

21. This Court has diversity jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because at least two thirds of the Class Members are citizens of states different from the Defendant's; more than 100 Class Members exist; and the amount in controversy for the Class exceeds $5,000,000.

22. This Court has jurisdiction over this action because Defendant is headquartered in California within the boundaries of this judicial district; has consented to jurisdiction by registering to conduct business in the state; maintains sufficient minimum contacts in California; and otherwise

CLASS ACTION COMPLAINT - 4

intentionally avails itself of the California markets through promotion, sale, marketing and distribution of the Class Laptops in and from the state, which renders the exercise of jurisdiction by this Court proper and necessary as Apple is "at home" in California.

23.     Venue is proper in this District, under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims of at least one Plaintiff occurred in this District.

24.     Plaintiff's venue declaration pursuant to Cal. Civ. Code § 1780(d) is attached hereto as Exhibit A.

## COMMON FACTUAL ALLEGATIONS

25.     Plaintiff is informed and believes that because of the Keyboard Defect, the Keyboards are predisposed to recurrently malfunction through no fault of the user's, under conditions that would not cause a non-defective keyboard to malfunction, requiring the Laptops' owners to pay for repeated temporary "fixes" including replacements of the Keyboard. When a Keyboard malfunctions, the results can include temporary or permanent failures of the key to register a keystroke, keys that stick or suffer from other mechanical failures, and keys that register keystrokes where none occurred. These malfunctions arise from contaminants, such as dust, that disrupt the internal components of the Keyboards' ability to actuate or register keystrokes, and which do not ordinarily cause a keyboard to malfunction.

**A.    The defective Keyboards are the Apple's pursuit of thinner laptops and greater market share.**

26.     In 2015, Apple debuted its thinnest laptop to date, the MacBook. Making a laptop that was only half an inch-thick required Apple to completely redesign its laptop keyboard. The resulting Keyboard was 40% thinner than its predecessors. To manage this feat, Apple developed all new internal components for the Keyboards, including a new butterfly mechanism connecting each keycap to the keyboard and a new steel dome switch, which, combined, allowed Apple to significantly reduce key travel—i.e., the vertical distance each key moves from a keystroke. The Keyboards' butterfly mechanism, steel dome switch, revised keycaps, and overall dimensions marked a significant departure from Apple's prior laptop keyboards, which relied on scissor-switch mechanisms and plastic switches housed inside of protective rubber domes.



27.     In descending order, pictured below are the following components of the Keyboards: (a) keycap; (b) butterfly mechanism; and (c) steel dome switch.

28.     During a keystroke, the butterfly mechanism expands, allowing the key to descend until a plunger on the bottom of the keycap (a) actuates the steel dome switch, which is responsible for the clicking sound a keystroke makes, and (b) causes sandwiched lawyers of conductive membrane not pictured above to open a circuit for electrical current, which signal to the keyboard's processor that a keystroke has occurred. After a keystroke has ended, the butterfly mechanism should contract, returning the keycap to its starting position.

29.     In addition to creating all-new internal components for the Keyboards, Apple also significantly increased the size of the Keyboards' keycaps. To accommodate the larger keycaps without increasing the Class Laptop's overall dimensions, Apple reduced the distance between each keycap on the Keyboards and shrunk the gap between each keycap and the surrounding keyboard case.

30.     The narrow gaps between each keycap and the keyboard case in the Class Boards prevent larger contaminants from entering the keyboards' internal mechanisms. Conversely, contaminants that enter the aperture between the keycaps and the keyboard case have no easy path of egress and tend to

lodge in or around the Keyboard's butterfly mechanism or unshielded steel dome switch, where they can cause the key to fail to accurately register keystrokes or alter the mechanical function of the keys.

31.     Because of the Keyboards' constricted paths of egress for contaminants and unshielded internal components, the Keyboards can fail—temporarily or permanently—from exposure to ubiquitous environmental contaminants, such as dust and contaminants transferred from the user's hands to the Keyboard.

**B.     Apple's knowledge of the Keyboard Defect**

*i.     Apple's '808 Patent*

32.     On September 8, 2016—more than a month before Apple announced the 2016 MacBook Pro Class Laptops—Apple filed a patent application titled "Ingress Prevention for Keyboards," which was granted on March 8, 2018 as U.S. Patent 20180068808 (the "'808 Patent").

33.     The '808 Patent provides designs for computer keyboard mechanisms that "prevent and/or alleviate contaminant (such as dust, liquid, and so on) ingress." The '808 Patent pictures a number of butterfly-switch keyboards, like the Keyboards, and incorpotes structures such as webs, brushes, wipers, or flaps to block gaps around key caps in order to prevent contaminant ingress; funnels, skirts, bands or other mechanisms intended to prevent the ingress of contaminants below the key or to direct contaminants away from below the keys; "bellows that blast contaminants with forced gas out from around the key caps, into cavities in a substrate of the keyboard"; and "various active or passive mechanisms that drive contaminants away from the keyboard and/or prevent and/or alleviate contaminant ingress into and/or through the keyboard." Two figures from the '808, pictured below, show designs for shielding a Keyboard's butterfly mechanism and dome switch from contaminant ingress through the use of physical barriers that are intended to shield the Keyboards' internal components from contaminants.



*FIG. 4*



*FIG. 5*

34.     On information and belief, none of the designs described in the '808 Patent application were incorporated in the Keyboards, which, as described above, possess unshielded internal components that are susceptible to failure from contaminant ingress.

  *ii. Apple's 2015 guide for cleaning Class Laptops affected by the Keyboard Defect.*

35.     On September 15, 2016, Apple posted cleaning instructions for MacBook Class Laptops with an "unresponsive key, or a key that feels different than the other keys when you press it." http://web.archive.org/web/20160915141146/https://support.apple.com/en-us/HT205662 (last visited June 30, 2018). The instructions provide for holding the laptop at a 75-degree angle and blowing compressed air along the keys in a descending zig-zag motion.

36.     Apple posted these instructions several months before the MacBook Pro Class Laptops, with their equally defective Keyboards went on sale.

37.     On October 15, 2017, Apple updated its cleaning instructions to add the MacBook Pro Class Laptop Keyboards. http://web.archive.org/web/20171018023803/https://support.apple.com/en-us/HT205662 (last visited May 29, 2018).

  *iii. Apple's knowledge of the Keyboard Defect from repair data.*

CLASS ACTION COMPLAINT - 8

38.     Apple also knew or should have known about the Keyboard Defect because of the large number of Keyboard replacements made during the Class Laptops' warranty period.

39.     Apple, like other hardware companies, collects, reviews, and analyzes detailed information about repairs made on laptops still under warranty at its retail locations, repair centers, and third-party service centers, including the type and frequency of such repairs. Complete data on such repairs is exclusively within Apple's control and unavailable to Plaintiff without discovery.

*iv.   Apple's knowledge of the defect from complaints posted online*

40.     On May 30, 2015, weeks after the first 12" MacBook Class Laptops went on sale, a user on Apple's forums created a discussion thread titled "MacBook 12" spacebar problem," and reported a faulty spacebar that "only clicks and works in the middle. The far left edge does not respond at all and the right edge responds only when pushing it hard. I unboxed the brand new computer two days ago." https://discussions.apple.com/thread/7063425 (last visited June 1, 2018).

41.     Since that first post, thousands of complaints have been posted on Apple's forums and other discussion forums.

**C.   Apple's One-Year Warranty**

42.     Apple sold the Class Laptops with a one-year written express warranty, which covers defects in materials and workmanship.

43.     Apple expressly distinguishes device defects, which are covered by its warranty, from the following, which are not: (a) consumable parts, (b) cosmetic damage; (c) damage caused by use with another product; (d) damage from accident, misuse, abuse, liquid contact, or other external causes, (e) damage from operating the Apple product outside its published guidelines; (f) damage from unauthorized service or repairs; (g) damage to Apple products modified without Apple's written permission; (h) defects caused by normal wear and tear; and (i) products with the serial number removed.

44.     Apple expressly warranted the Class Laptops in writing and promised to "(i) repair the Apple Product using new or previously used parts that are equivalent to new in performance and reliability, (ii) replace the Apple Product with a product that is at least functionally equivalent to the

Apple Product and is formed from new and/or previously used parts that are equivalent to new in performance and reliability, or (iii) exchange the Apple Product for a refund of your purchase price."

45.     Apple provides this warranty to buyers after the purchase of a Class Laptop is completed.

**D.    Apple's marketing and concealment**

46.     Apple charges a premium for its laptops, which it justifies, in large part, on the basis of laptop durability.

47.     Apple's website represents that "to ensure the longevity of Apple products, we put our hardware to the test in our Reliability Testing Lab using methods that mimic real-world experiences." https://www.apple.com/business/products-platform/ (last visited May 24, 2018).

48.     On information and belief, Apple's in-store sales staff are trained, through store meetings and role-playing exercises, to justify the high cost of Apple laptops to consumers on the basis that the laptops will last on average for between five to seven years.

49.     Apple also specifically promotes the testing of its keyboards, and their durability, in its Input Lab. *See* Steven Levy, Wired, *What I Saw Inside Apple's Top-Secret Input Lab* (Oct. 13, 2015, 12:00 a.m.), https://www.wired.com/2015/10/what-i-saw-inside-apples-top-secret-input-lab/ (last visited May 24, 2018). Pictured below is a device Apple calls a "tapper," which pokes each keycap five times, once on each corner and once in the center, to confirm that keystrokes register. *Id.*



50.     Apple also uses the device pictured below to test keyboard endurance, tapping each key up to 5,000,000 times. *Id.*



51.     Apple described the Keyboards as an innovative design that "improves stability, uniformity and control."

52.     When unveiling the Keyboards in Apple's 2015 keynote address, Phil Schiller, Apple's Senior Vice President, described the Keyboards as "much more precise and accurate" than preceding models. A presentation during the keynote described the Keyboards as "a sturdy single assembly butterfly mechanism combined with the new stainless steel dome switch."

53.     In October 2016, Apple announced an updated line of its top-of-the-line MacBook Pro laptops. Apple described the new MacBook Pros as "[t]he ultimate tool of every trade." http://web.archive.org/web/20161117034007/http://www.apple.com:80/macbook-pro/. (last visited May 24, 2018). The redesigned MacBook Pros, Apple boasted, were "remarkably thinner and lighter" than the prior models. As with the 2015 MacBooks, the MacBook Pros newfound thinness was largely due to the inclusion of the low-profile Keyboards.

54.     The MacBook Pro Class Laptops announced in October 2016 represented a complete redesign of Apple's premium laptop computers and, thanks to Apple's incorporation of the Keyboards, allowed Apple to market the 2016 models as being more powerful than their predecessors, while being "remarkably thinner and lighter."

1    http://web.archive.org/web/20161117034007/http://www.apple.com:80/macbook-pro/ (last visited

2    May 24, 2018).

3        55.    Because of negative feedback the Keyboards received in the 2015 MacBooks, **Apple**

4    modified the Keyboards in the MacBook Pro laptops to create a more traditional keyboard feel. Apple

5    accomplished this by reducing the thickness of the butterfly-switch bodies and modifying the shape and

6    design of the keycaps. The result, according to Apple, was a "[m]ore responsive keyboard." *Id.*

7        56.    In describing the 2016 MacBook Pro Laptops, Mr. Schiller stated the following: "But

8    now we've applied [the Keyboards] to a professional notebook, and in this case there's a new switch

9    mechanism, a 2nd generation butterfly. It's more responsive and gives an even greater sense of

10    keyboard travel as you press on it." https://singjupost.com/apple-macbook-pro-hello-again-special-

11    event-october-2016-keynote-full-transcript/?singlepage=1 (last visited May 29, 2018).  During that

12    same event, a pre-recorded presentation said that Apple had "continued to refine our keyboard design

13    to be more accurate and efficient. Dome switches beneath each key have been optimized for a more

14    responsive feel." *Id.*

15        57.    The redesigned Keyboards in the MacBook Pro laptops did not prevent manifestation of

16    the Keyboard Defect because they share the same fundamental flaw.

17        58.    Apple again redesigned the Keyboards and incorporated the redesigned Keyboards into

18    the 2017 MacBook Pro laptops. According to one report, "The keyboard trigger looks like a more

19    classic switch this go-around. The plastic butterfly mechanism appears to have thinned out to

20    accommodate the new switch form factor." https://9to5mac.com/2017/06/08/fixit-2017-macbook-

21    and-macbook-pro-teardown/ (last visited May 24, 2018).

22        59.    On information and belief, Apple's 2017 revision of the Keyboards was intended to

23    address the Keyboard Defect, and Apple now exclusively uses the 2017 Keyboards when replacing

24    Keyboards affected by the Keyboard Defect.

25    **E.    The Keyboard Defect affects thousands of Class Laptop owners and can cost up to $700 to**

26    **repair.**

27        60.    In addition to affecting ordinary consumers, the Keyboard Defect has also impacted

28    Apple commentators, who have been vocal in their response to the Defect:

CLASS ACTION COMPLAINT - 12

> "Maybe it's a piece of dust," the Genius had offered. The previous times I'd been to the Apple Store for the same computer with the same problem—a misbehaving keyboard—Geniuses had said to me these exact same nonchalant words, and I had been stunned into silence, the first time because it seemed so improbable to blame such a core problem on such a small thing, and the second time because I couldn't believe the first time I was hearing this line that it was not a fluke. But this time, the third time, I was ready. "Hold on," I said. "If a single piece of dust lays the whole computer out, don't you think that's kind of a problem?"

Casey Johnston, *The New MacBook Keyboard is Ruining My Life*, THE OUTLINE, (October 27, 2017, 9:43 a.m.), https://theoutline.com/post/2402/the-new-macbook-keyboard-is-ruining-my-life?zd=1&zi=7xikh4qs (last visited May 24, 2018).

61.    Five months after publishing "The New MacBook Keyboard is Ruining My Life," the author, Casey Johnston, published a second piece titled "Don't Buy the MacBook Pros even on sale, in my opinion." Casey Johnston, *Don't Buy the MacBook Pros even on sale, in my opinion*, THE OUTLINE, (April 28, 2018, 10:52 a.m.), https://theoutline.com/post/2402/the-new-macbook-keyboard-is-ruining-my-life?zd=1&zi=7xikh4qs (last visited May 28, 2018). The article contained numerous embedded tweets from owners of Keyboards related to the Keyboard Defect:





62.     A leading Apple commentator, Jon Gruber, describes the Keyboards as "one of the biggest design screwups in Apple history. Everyone who buys a MacBook depends upon the keyboard and this keyboard is undependable." Jon Gruber, *Casey Johnston Gives Up on the Current MacBook Pro*, Daring Fireball, (Apr. 25, 2018), https://daringfireball.net/linked/2018/04/25/johnston-mbp-keyboard (last visited May 24, 2018).

63.     Another leading Apple commentator, Jason Snell, wrote the following: "If [the Keyboards] problems are remotely as common as they seem to be, this is an altogether defective product that should be recalled." Jason Snell, *Casey Johnston: "Don't Buy the MacBook Pros even on sale"*, The Outline (April 25, 2018, 11:01 am), https://theoutline.com/post/4277/dont-buy-the-new-macbook-pros-even-on-sale-in-my-opinion?zd=1&zi=eps7b74w (last visited May 24, 2018).

64.     A popular Apple news website, Apple Insider, published an article on April 30, 2018, reporting that the Keyboards were failing at a significantly higher rate than their scissor-switch predecessors. Mike Wuerthele, *2016 MacBook Pro Butterfly Keyboards Failing Twice as Frequently as Older Models*, Apple Insider (April 30, 2018, 10:06 a.m.), https://appleinsider.com/articles/18/04/30/2016-macbook-pro-butterfly-keyboards-failing-twice-as-frequently-as-older-models (last visited May 24, 2018). Relying on a dataset of more than 10,000 warranty events provided by Apple Genius bars, the Apple Insider article found that the Keyboards were failing at a far higher rate than their scissor-switch predecessors. *Id.* Specifically, 11.6% of 2016 MacBook Pro warranty events related to Keyboard issues, excluding warranty-voiding accidents like water spills, or damage caused by impacts. *Id.* Though a complete dataset was not available for 2017 MacBook Pro Laptops, the article found that Keyboard-related claims accounted for 8.4% of all warranty claims. *Id.* By comparison, keyboard-related warranty events for 2014 and 2015 MacBook Pro

laptops, which used scissor-switch keyboards, amounted to 5.7% percent of warranty claims. *Id.* The article concluded that "the near-doubled failure rate of the keyboard in the first year on the 2016 MacBook Pro is a ticking time bomb for users, and it doesn't matter why." *Id.*

65.    On April 27, 2018, an owner of a Class Laptop started an online petition urging Apple to recall the Class Laptops. In just over a month, that petition collected more than 29,000 signatures. Matthew Taylor, *Apple: Recall MacBook Pro w/ Defective Keyboard, Replace with DIFFERENT Working Keyboard*, CHANGE.ORG (April 27, 2018), https://www.change.org/p/apple-apple-recall-macbook-pro-w-defective-keyboard-replace-with-different-working-keyboard (last visited May 30, 2018). A sampling of the comments accompanying the petition signatures follows:



**Aleksey Ilyin**
1 day ago ago

**REASON FOR SIGNING**

I sign because my button "down" does not work on my MacBook Pro 13 2017. Apple's support said that compressed air will help, but it does not help.



**owen Visser**
1 day ago ago

**REASON FOR SIGNING**

My J key only works if you press it really hard! It's ust infuriating



**Jose Bello**
2 days ago ago

Macbook pro 15 2017, P key would not work unless pressed several times. Luckily I was able to return as it was only a few days after purchase. Bought a 2015 macbook pro instead and will hold on dearly. if it wasn't for macos I would have gone with a win laptop long ago... so many better options

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**derek holmberg**
3 days ago ago

**REASON FOR SIGNING**

Because I bought a macbook pro at christmas and it is now may and I am already having problems with the keyboard! I pay a lot extra for apple products so that I don't ever have to deal with this type of stuff.

**Justine Hovey**
4 days ago ago

**REASON FOR SIGNING**

My laptop just had the keyboard replaced for the second time. Both times took 5 weeks. Now they have informed me that the touchbar is no longer responding and needs to be replaced as well. The keyboard never worked properly from day 1 and has been replaced twice in three months. Waste of money!

 **Maxim Dietz**
5 days ago ago

**REASON FOR SIGNING**

I've gone in over 4 times to have them fix it ... this is ridiculous. They need to either buy back every single Macbook and Macbook pro, or replace every keyboard with a non-defective one FOR FREE.

CLASS ACTION COMPLAINT - 16



**Bernhard FRICK**
3 days ago ago

REASON FOR SIGNING

15" MacBook Pro 2016
spacebar is notworkingproperly
...
spacebar is not working properly
if hit on the right side it doesn't react.
Sticky keys with flashing screen had been another occasional problem.
Very disappointed
a >20y Mac user



**Ian Gray**
3 days ago ago

REASON FOR SIGNING

I have had 5 keys fail multiple times on my late 2016 MacBook Pro. The Apple store manage to fix some of the keys but eventually I had to have the whole keyboard replaced. Thankfully I have 3 years Apple Care, but what happens after the 3 years is up?

**Anjandeep Sahni**
3 days ago ago

REASON FOR SIGNING

I bought a Macbook Pro 13" in June 2017. The 'n' key became sticky after a few months and I had to get ultimately get it fixed in May 2018. The apple repair center mentioned that they had to replace the entire front panel which included the keyboard, touchbar, touchpad and battery. Luckily my Macbook was under warranty. When I asked the repair center how much it would have cost to repair outside of warranty, they quoted it would be in the range of ~$700!! I am considering buying extended warranty for my Macbook only because I feel that the keyboard will stop working again!

CLASS ACTION COMPLAINT - 17

66.     When even a single key fails on a Class Laptop outside of the warranty period, Apple charges up to $700 for the repair. That is because repairing the keyboard requires replacing the entire Laptop's lower assembly including the keyboard, the case assembly that surrounds the Keyboard, the battery (which Apple glues to the Laptop case during the manufacturing process) and the USB ports on the case.

67.     Owners of Class Laptops seeking to repair a broken keyboard at home face the daunting task of repairing a device that Apple intentionally designed to be irreparable by the owner. Replacing the Keyboard requires ungluing the laptops' battery from the case and using a specialized tool to remove between 50 and 100 consumer-proof rivets from the Laptop in order to access the keyboard. If one of the delicate rivet shears off during this procedure, the replacement Keyboard will not sit flush in the case.

## **FRAUDULENT CONCEALMENT ALLEGATIONS**

68.     Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Apple responsible for disseminating false and misleading marketing materials regarding the Class Laptops. Apple necessarily is in possession of all of this information. Plaintiff's claims arise out of Apple's fraudulent concealment of the Keyboard Defect and the Keyboard failures and malfunctions it causes, and its representations about the stability, accuracy, precision, and durability of the Class Laptops' Keyboards. To the extent that Plaintiff's claims arise from Apple's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiff bases his claims.

69.     Plaintiff alleges that at all relevant times, including specifically at the time he purchased his Class Laptop, Apple knew, or was reckless in not knowing, of the Keyboard Defect; Apple was under a duty to disclose the Defect based upon its exclusive knowledge of it, and its concealment of it; and Apple never disclosed the Defect to Plaintiff or the public at any time or place or in any manner.

70.     Plaintiff makes the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Apple:

71.     *Who:* Apple actively concealed the Keyboard Defect from Plaintiff and Class Members while simultaneously touting the durability, precision, responsiveness, and accuracy of the Class

Laptops, as alleged in paragraphs 45—52, above. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Apple responsible for such decisions.

72.　*What:* Apple knew, or was negligent or reckless in not knowing, that the Class Laptops contain the Keyboard Defect, as alleged above in paragraphs 32—41 above. Apple concealed the Defect and made representations about the durability, responsiveness, precision, suitability for professional work, and other attributes of the Class Laptops, as specified above in paragraphs 45—52.

73.　*When:* Apple concealed material information regarding the Defect at all times and made representations about the world-class quality, durability, precision, and comfort of the Class Laptops, starting no later than 2015, or at the subsequent introduction of certain models of Class Laptops to the market, continuing through the time of sale, and on an ongoing basis, and continuing to this day, as alleged above in paragraphs 42—52. Apple still has not disclosed the truth about the Defect in the Class Laptops to anyone outside of Apple. Apple has never taken any action to inform consumers about the true nature of the Defect in Class Laptops. And when consumers brought their Laptops to Apple complaining of the Keyboard Defect, Apple denied any knowledge of or responsibility for the Keyboard Defect, and in many instances, actually blamed the customer for causing the Defect.

74.　*Where:* Apple concealed material information regarding the true nature of the Defect in every communication it had with Plaintiff and Class Members and made representations about the world-class quality, sophistication, state-of-the-art safety, and comfort of the Class Laptops. Plaintiff is aware of no document, communication, or other place or thing, in which Apple disclosed the truth about the Defect in the Class Laptops to anyone outside of Apple. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Apple's website.

75.　*How:* Apple concealed the Keyboard Defect from Plaintiff and Class Members and made representations about the world-class quality, sophistication, state-of-the-art safety, and comfort of the Class Laptops. Apple actively concealed the truth about the existence and nature of the Defect from Plaintiff and Class Members at all times, even though it knew about the Defect and knew that

information about the Defect would be important to a reasonable consumer, and Apple promised in its marketing materials that Class Laptops have qualities that they do not have.

76. *Why:* Apple actively concealed material information about the Defect in the Class Laptops for the purpose of inducing Plaintiff and Class Members to purchase and/or lease Class Laptops, rather than purchasing or leasing competitors' laptops and made representations about the world-class quality, sophistication, state-of-the-art safety, and comfort of the Class Laptops. Had Apple disclosed the truth, for example in its advertisements or other materials or communications, Plaintiff and Class Members (all reasonable consumers) would have been aware of it, and would not have bought or leased the Class Laptops or would have paid less for them.

## CLASS ALLEGATIONS

77. Plaintiff brings this lawsuit on behalf of himself and all similarly situated individuals and entities, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed Class and Subclass (collectively, the "Classes") are defined as follows:

**Nationwide Class**
All persons who purchased in the United States a Class Laptop.

**California Subclass**
All persons who purchased in California a Class Laptop.

78. A "Class Laptop" is a laptop of any of the following models:

12" MacBook

13" MacBook Pro with TouchBar,

13" MacBook Pro without TouchBar, or

15" MacBook Pro with TouchBar.

79. Excluded from the Classes are Defendant, its affiliates, and its current and former employees, officers and directors.  Plaintiff reserves the right to modify, change, or expand the definitions of the Class and Subclass based upon discovery and further investigation.

80. *Numerosity*: The Classes are so numerous that joinder of all members is impracticable. At least hundreds of thousands of Class Members have been subjected to Defendant's conduct in each

state. The class is ascertainable by reference to records in the possession of Apple and its retail locations.

81.     *Predominance*: Common questions of law and fact exist as to all members of the Classes. These questions predominate over questions affecting individual members of the Classes and include:

a.) Whether the Keyboards possess a design defect;

b.) Whether the Keyboards possess a manufacturing defect;

c.) Whether the Keyboards were defective at the point of sale;

d.) Whether the Keyboard Defect substantially reduces the value of the Class Laptops;

e.) Whether Defendant knew of the Keyboard Defect but failed to disclose it to consumers;

f.)  Whether and when Defendant knew that the Keyboards have a propensity to inaccurately register user data input or suffer from mechanical failures during normal and expected use conditions, rendering them functionally unusable;

g.) Whether a reasonable consumer would consider the Keyboard Defect to be material;

h.)  Whether Defendant's conduct was unlawful;

i.)  Whether Defendant acted negligently, recklessly, and/or with intent to deceive;

j.)  Whether Plaintiff and Class Members overpaid for their Class Laptops as a result of the Keyboard Defects;

k.) Whether Plaintiff and Class Members are entitled to damages and other monetary relief, and, if so, in what amount; and

l.)  Whether Plaintiff and Class Members are entitled to equitable relief, including restitution or injunctive relief.

82.     *Typicality*: Plaintiff's claims are typical of the claims of the members of the Classes, as all such claims arise out of Defendant's conduct in designing, manufacturing, marketing, advertising, and selling the Class Laptops. All of Plaintiff's claims are typical of the claims of the Class since Plaintiff and all Class members were injured in the same manner by Defendant's uniform course of conduct described herein.  Plaintiff and all Class members have the same claims against Defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to

those giving rise to the claims of all Class members.  Plaintiff and all Class members sustained economic injuries including, but not limited to, ascertainable losses arising out of Defendant's course of conduct as described herein. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

83.     *Adequacy*: Plaintiff will fairly and adequately protect the interests of the members of the Classes and has no interests antagonistic to those of the Classes. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, *inter alia*, breach of warranties, product liability, product design defects, and state consumer fraud statutes.

84.     *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Classes is impracticable, and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class Members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

85.     *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION
(Violations of California's Consumer Legal Remedies Act,
Cal. Civ. Code § 1750, *et seq.*)

86.     Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

87.     Plaintiff brings this claim on behalf of himself and the California Subclass.

88.     The Class Laptops are "goods" as defined in Cal. Civ. Code § 1761(a).

89.     Plaintiff and California Subclass members are "consumers" as defined in Cal. Civ. Code § 1761(d).

90. Defendant is a "person" as defined in Cal. Civ. Code § 1761©.

91. The purchases by Plaintiff and California Class members are "transactions" as defined by Cal. Civ. Code § 1761(e).

92. Defendant's conduct, as described herein, was and is in violation of the CLRA. Defendant's conduct violates at least the following enumerated CLRA provisions:

      a. § 1770(a)(4): Using deceptive representations in connection with goods;

      b. § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

      c. § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another; and

      d. § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

93. Specifically, Defendant's actions led consumers to reasonably believe that the Class Laptops would be usable to perform basic computing functions including word processing, accessing the internet, and composing emails, but because of the Keyboard Defects, the Class Laptops cannot be so used.

94. Plaintiff and California Subclass members have suffered injury in fact and actual damages resulting from Defendant's material omissions and misrepresentations because, *inter alia,* they lost money when they purchased their laptops, paid an inflated purchase price for the Class Laptops, or paid money for repairs, extended warranty service.

95. Defendant knew, should have known, or was reckless in not knowing that the Keyboard Defect in the Class Laptops rendered them not suitable for their intended use of inputting information.

96. Defendant had a duty to disclose the Keyboard Defect because Apple had exclusive knowledge of the defects prior to making sales of the Class Laptops and because Defendant made partial representations about the quality, performance, and reliability of the Class Laptops but failed to disclose the Keyboard Defect.

97. Defendant further breached its duty to disclose the Keyboard Defect by attempting to conceal the defects with the rollout of known ineffective fixes.

98.     Defendant falsely represented that its Class Laptops were durable and suitable for professional use and contained precise, reliable Keyboards that "improves stability, uniformity, and control" and operate as "[m]ore responsive keyboard[s]."

99.     These representations were false and misleading because the Keyboard Defects cause the Keyboards to fail to register inputs under normal use conditions, rendering the Class Laptops unusable well within the useful lifespan of the Class Laptops.  Apple was aware the Keyboards suffered from the Keyboard Defects and that the Class Laptops did not perform as advertised.

100.     The facts Apple concealed and omitted—that the Class Laptops are defective and fail prematurely—are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the laptops or pay a lower price. Had Plaintiff and California Subclass members known about the defective nature of the laptops, they would not have purchased them or purchased them at a much lower price.  As a result of Defendant's misconduct, Plaintiff and those similarly situated were harmed in the amount of the price premium they paid (i.e., the difference between the price consumers paid for the Class Laptops and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

101.     **CLRA § 1782 NOTICE**. Irrespective of any representations to the contrary in this Class Action Complaint, Plaintiff specifically disclaims, at this time, any request for damages under any provision of the CLRA. Plaintiff, however, hereby provides Defendant with notice and demand that within thirty (30) days from June 4, 2018, Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Defendant's failure to do so will result in Plaintiff amending this Class Action Complaint to seek, pursuant to California Civil Code § 1780(a)(3), on behalf of himself and those similarly situated members of the California Subclass, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

102.     Plaintiff further seeks an order awarding costs of court and attorneys' fees pursuant to Cal. Civ. Code § 1780(e).

## SECOND CAUSE OF ACTION

(Violation of California's Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200, et seq.)

103.     Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

104.     Plaintiff brings this claim on behalf of himself and the California Subclass.

105.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Apple engaged in conduct that violated each of this statute's three prongs.

106.     Apple committed *unlawful business acts or practices* in violation of Cal. Bus. & Prof. Code § 17200, et seq., by systematically breaching its warranty obligations and by violating the CLRA, the False Advertising Law, and the Song-Beverly Consumer Warranty Act as alleged above and below.

107.     Apple committed *unfair business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq.,* because the acts and practices described herein, including but not limited to Apple's failure to provide a permanent remedy to fix the Keyboard Defect, were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and California Subclass Members. Apple's acts and practices were additionally unfair because the harm to Plaintiff and Class Members is substantial and is not outweighed by any countervailing benefits to consumers or competition. Further, Apple's acts and practices were unfair in that they were contrary to legislatively declared or public policy.

108.     Apple committed *fraudulent business acts and practices* in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, when it concealed the existence and nature of the Keyboard Defect, while representing in its marketing, advertising, and other broadly disseminated representations that the Class Laptops were, *inter alia*, suitable for professional use, durable, precise, responsive, and accurate, when, in fact, they were not. Apple's representations and active concealment of the Defect are likely to mislead the public with regard to the true defective nature of the Class Laptops.

109.     Apple's unfair or deceptive acts or practices occurred repeatedly in the course of Apple's trade or business and were likely to mislead a substantial portion of the purchasing public.

110.     Plaintiff relied on Apple's material misrepresentations and nondisclosures, and would not have purchased/leased, or would have paid less for, the Class Laptops had they known the truth.

111.     As a direct and proximate result of Apple's unfair, unlawful, and deceptive practices, Plaintiff has lost money.

112.     Plaintiff and Class Members seek an order enjoining Apple from committing such unlawful, unfair, and fraudulent business practices, and seek restitution pursuant to Cal. Bus. & Prof. Code § 17203

### THIRD CAUSE OF ACTION
(Violations of California's False Advertising Law,
Cal. Bus. & Prof. Code § 17500, *et seq.*)

113.     Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

114.     Plaintiff brings this claim on behalf of himself and the California Subclass.

115.     Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, Defendant has made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Class Laptops.

116.     Plaintiff and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, paying less for the Class Laptops.

117.     Defendant's acts and omissions are likely to deceive the general public.

118.     Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

119.     The aforementioned practices, which Defendant has used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

120.     Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

---

121.     Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. The acts complained of herein occurred, at least in part, within three (3) years preceding the filing of this Class Action Complaint.

122.     Plaintiff and California Subclass Members are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining Defendant from engaging in any such advertising and marketing practices in the future. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled. Plaintiff, the California Subclass, and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

123.     As a direct and proximate result of such actions, Defendant and the other members of the California Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in the amount of the price premium they paid (i.e., the difference between the price consumers paid for the Class Laptops and the price they would have paid but for Defendant's misrepresentations), which shall be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis. This amount is in excess of the jurisdictional minimum of this Court.

## FOURTH CAUSE OF ACTION
(Breach of Express Warranty under the
Song-Beverly Consumer Warranty Act)

124.     Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

125.     Plaintiff brings this claim on behalf of himself and the California Subclass.

126.     The Class Laptops are "consumer goods" under Cal. Civ. Code § 1791(a).

127.     Plaintiff and California Subclass Members are "buyers" under Cal. Civ. Code § 1791(b).

128.    Apple is and was at all relevant times a "manufacturer" and seller of the Class Laptops under Cal. Civ. Code § 1791(j).

129.    Plaintiff and California Subclass Members bought Class Laptops designed, manufactured, warranted, marketed to them, and intended to be purchased by consumers such as them, by Apple.

130.    Apple expressly warranted the Class Laptops against defects including the Keyboard Defect, as described above, within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2.

131.    As described above, the Keyboard in the Class Laptops is defective. The Keyboard Defect substantially impairs the use, value, and durability of the Class Laptops to reasonable consumers, including Plaintiff and Class Members.

132.    Apple knew of the Keyboard Defect when it expressly warranted the Class Laptops, wrongfully and fraudulently concealed material facts regarding the Defect, failed to inform Class Members that the Class Laptops had defective keyboards, and induced Plaintiff and Class Members to purchase the Class Laptops under false or fraudulent pretenses.

133.    Apple is obligated, under the terms of its express warranties, and pursuant to Cal. Civ. Code §§ 1793.2 and 1795.4, to repair or replace the defective Keyboards in the Class Laptops at no cost to Plaintiff and California Subclass Members.

134.    Apple breached its express warranties by supplying the Class Laptops to Plaintiff and California Subclass Members with the Keyboard Defect, by failing to repair the Class Laptops under warranty, and by failing to provide to Plaintiff or California Subclass Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it promised when it sold the Class Laptops to Plaintiff and California Subclass Members.

135.    As more fully detailed above, Apple was provided with appropriate notice and has been on notice of the Defect and of its breach of its express written warranties from various sources, including Plaintiff.

136.    Plaintiff has given Apple a reasonable opportunity to cure its failures with respect to its warranties, and Apple has failed to do so.

137.     Affording Apple any further opportunity to cure its breach of written warranties is unnecessary and futile here.

138.     Any express warranties promising to repair and/or correct any defects fail in their essential purposes because the contractual remedy is insufficient to make Plaintiff and California Subclass Members whole and because Apple has failed or has refused to adequately provide the promised remedies within a reasonable time.

139.     Accordingly, recovery by Plaintiff and California Subclass Members is not restricted to any written warranties promising to repair and/or correct defects, and they seek all remedies as allowed by law.

140.     Any attempt by Apple to limit or disclaim the express warranties in a manner that would exclude coverage of the Keyboard Defect is unenforceable and void pursuant to Cal. Civ. Code § 1790.1.

141.     As a direct and proximate result of Apple's breach of its express warranties, Plaintiff and Class Members received goods that have substantially impaired value and have suffered damages in an amount to be determined at trial.

142.     Pursuant to Cal. Civ. Code §§ 1794 and 1795.4, Plaintiff and Class Members are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees.

## FIFTH CAUSE OF ACTION
### (Breach of Express Warranty)

143.     Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

144.     Plaintiff brings this claim on behalf of himself and the Nationwide Class.

145.     The Class Laptops are and were at all relevant times "goods" within the meaning of, *inter alia*, Cal. Com. Code §§ 2105(1) and 10103(a)(8).

146.     Apple is and was at all relevant times a "merchant" with respect to the Class Laptops, under, inter alia, Cal. Com. Code §§ 2104(1) and 10103(c), and a "seller" of the Class Laptops, under § 2103(1)(d).

147.     195. Plaintiff and Class Members are "buyers" within the meaning of, inter alia, Cal. Com. Code §§ 2103(a) and 10103(a)(14).

148.     Plaintiff and Class Members bought Class Laptops designed, manufactured, warranted, marketed to them, and intended to be purchased or leased by consumers such as them, by Apple.

149.     Apple expressly warranted the Class Laptops against defects, including the Keyboard Defect, within the meaning of, inter alia, Cal. Com. Code §§ 2313, 2316, 10210, and 10214.

150.     As described above, the Keyboard in the Class Laptops is defective. The Keyboard Defect substantially impairs the use, value, and durability of the Class Laptops to reasonable consumers, including Plaintiff and Class Members.

151.     Apple knew of the Keyboard Defect when it expressly warranted the Class Laptops, wrongfully and fraudulently concealed material facts regarding the Defect, failed to inform Class Members that the Class Laptops had the Defect, and induced Plaintiff and Class Members to purchase or lease the Class Laptops under false and/or fraudulent pretenses.

152.     Apple is obligated, under the terms of its express warranties, to repair and/or replace the Keyboards for Plaintiff and Class Members.

153.     Apple breached its express warranties by supplying the Class Laptops to Plaintiff and Class Members with the Keyboard Defect.

154.     Apple breached its express warranties by failing to repair the Class Laptops and by failing to provide to Plaintiff or Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it promised when it sold the Class Laptops to Plaintiff and Class Members.

155.     As more fully detailed above, Apple was provided with appropriate notice and has been on notice of the Defect and of its breach of express written warranties from various sources, including Plaintiff.

156.     Plaintiff have given Apple a reasonable opportunity to cure its failures with respect to its warranties, and Apple has failed to do so.

157.     Affording Apple any further opportunity to cure their breach of written warranties is unnecessary and futile here.

158. Any express warranties promising to repair and/or correct any defects fail in their essential purposes because the contractual remedy is insufficient to make Class Members whole and because Apple has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

159. Accordingly, recovery by the Class Members is not restricted to any written warranties promising to repair and/or correct defects, and they seek all remedies as allowed by law.

160. In its capacity as a warrantor, and by the conduct described herein, any attempt by Apple to limit or disclaim the express warranties in a manner that would exclude coverage of the Keyboard Defect is unconscionable as a matter of law because the relevant purchase transactions were tainted by Apple's concealment of material facts. Thus, any effort by Apple to disclaim, or otherwise limit, its liability for the Keyboard Defect is null and void.

161. As a direct and proximate result of Apple's breach of express warranties, Plaintiff and Class Members received goods that have substantially impaired value and have suffered damages in an amount to be determined at trial.

162. Plaintiff and Class Members are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees.

## SIXTH CAUSE OF ACTION
### (Breach of Express Warranty – Magnuson-Moss Warranty Act)

163. Plaintiff incorporate by reference each allegation set forth in the preceding paragraphs.

164. Plaintiff brings this claim on behalf of himself and the Nationwide Class.

165. The Class Laptops are "consumer products" as defined in 15 U.S.C. § 2301(1).

166. Plaintiff and Class Members are "consumers" as defined in 15 U.S.C. § 2301(3).

167. Apple is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

168. Apple provided Plaintiff and Class Members with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

169. Apple has breached its express warranties by refusing to honor the express warranty to replace or repair, free of charge, any defective vehicle component, including the Keyboard Defect.

170.    At the time Class Laptops were sold, Apple knew that they possessed the Keyboard Defect and offered an express warranty with no intention of honoring said warranty with respect to the known Defect.

171.    Additionally, pursuant to 15 U.S.C. § 2304(d)(1), "the warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted product . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor."

172.    At no time has Apple offered a permanent or adequate repair or replacement of the Keyboard that would permanently prevent manifestation of the Keyboard Defect. Despite repeated demands by Plaintiff and Class Members that Apple pay the costs and incidental expenses associated with temporarily "fixing" the Keyboard, Apple has refused to do so. Apple's refusal to provide a permanent repair or replacement for the Keyboard Defect and to pay for the temporary "fixes" violates 15 U.S.C. § 2304(d)(1).

173.    Apple was afforded a reasonable opportunity to cure its breach of the express warranty but failed to do so.

174.    Under 15 U.S.C. § 2310(e), notice of breach of warranty need not be provided until after Plaintiff has been appointed Class Representatives; nevertheless Apple had been notified, as alleged above.

175.    As a direct and proximate result of Apple's breach of its express written warranties, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
(Breach of Implied Warranty Under Song-Beverly Consumer Warranty Act)

176.    Plaintiff incorporate by reference each allegation set forth in the preceding paragraphs.

177.    Apple's Class Laptops are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

178.    Apple is a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

CLASS ACTION COMPLAINT - 32

179.     Plaintiff and Class Members who purchased or leased their Class Laptops within the State of California are "buyers" and "lessees" within the meaning of Cal. Civ. Code §§ 1791(b) and (h).

180.     Apple impliedly warranted to Plaintiff and Class Members that its Laptops were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.

181.     Apple impliedly warranted to Plaintiff and Class Members that it would repair or replace any defective products, including the defective Keyboard that produces the Keyboard Defect.

182.     The propensity of the Keyboard Defect to fail to register keystrokes, renders the Class Laptops to not be of the quality that a buyer would reasonably expect, and therefore not merchantable.

183.     The Class Laptops do not conform to the promises or affirmations of fact made by Apple in its promotional materials in that the Keyboard Defect creates a condition which is neither remediable by the consumer nor the product of misuse by the consumer

184.     In violation of Cal. Civ. Code § 1791.1(a), Apple breached its implied warranty by selling/leasing Class Laptops that were defective and refusing to permanently replace and/or repair the defective Keyboards.

185.     The Keyboard Defect has deprived Plaintiff and Class Members of the benefit of their bargain, and have caused the Class Laptops to depreciate in value.

186.     Any attempt by Apple to limit or disclaim the express warranties in a manner that would exclude coverage of the Keyboard Defect is unenforceable and void pursuant to Cal. Civ. Code §§ 1790.1, 1792.3, and 1793.

187.     As a result of Apple's breach of its implied warranties, Plaintiff and Class Members have been damaged in an amount to be proven at trial and are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, pursuant to Cal. Civ. Code §§ 1794 and 1795.4.

## EIGHTH CAUSE OF ACTION
### (Breach of Implied Warranty)

188.     Plaintiff incorporate by reference each allegation set forth in the preceding paragraphs.

189.    The Class Laptops are and were at all relevant times "goods" within the meaning of, inter alia, Cal. Com. Code §§ 2105(1) and 10103(a)(8).

190.    Apple is and was at all relevant times a "merchant" with respect to the Class Laptops, under, inter alia, Cal. Com. Code §§ 2104(1) and 10103(c), and a "seller" of the Class Laptops, under § 2103(1)(d); and, with respect to leases, is and was at all relevant times a "lessor" of the Class Laptops, under, inter alia, Cal. Com. Code § 10103(a)(16).

191.    Plaintiff and Class Members are "buyers" or "lessees" within the meaning of, inter alia, Cal. Com. Code §§ 2103(a) and 10103(a)(14).

192.    When it sold or leased its Class Laptops, Apple extended an implied warranty to Class Members that the subject Laptops were merchantable and fit for the ordinary purpose for which they were sold or leased, pursuant to Cal. Com. Code §§ 2314, 10212, and 10214.

193.    Plaintiff and other Class Members who purchased a Class Laptop directly from Apple are entitled to the benefit of their bargain: a Laptop with a non-defective Keyboard.

194.    Apple breached this implied warranty in that its Class Laptops are (1) not fit for ordinary use, and (2) not of a merchantable quality.

195.    Had the Keyboard Defect that existed at the time of sale been known, the Class Laptops could not have been sold, or could not have been sold at the same price.

196.    As a direct and proximate result of Apple's breach of the implied warranty of merchantability, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

### NINTH CAUSE OF ACTION
(Breach of Implied Warranty – Magnuson-Moss Warranty Act)

197.    Plaintiff incorporate by reference each allegation set forth in the preceding paragraphs.

198.    Plaintiff and Class Members are "consumers" as defined in 15 U.S.C. § 2301(3).

199.    Defendant Apple is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

200.    The subject Class Laptops are "consumer products" as defined in 15 U.S.C. § 2301(1).

201.    Apple extended an implied warranty to Plaintiff and Class Members by operation of 15 U.S.C. § 2301(7), and this implied warranty covers defects in its Class Laptops and its Class Laptops' Keyboards.

202.    Apple breached this implied warranty by selling/leasing its Class Laptops with defective Keyboards that were neither merchantable nor fit for their intended purpose.

203.    As a direct and proximate result of Apple's breach of the implied warranty under the Magnuson-Moss Act, Plaintiff, and the Class, have been damaged in an amount to be proven at trial.

## TENTH CAUSE OF ACTION
### (Fraud by Concealment)

204.    Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

205.    Plaintiff brings this cause of action for himself and on behalf of the Nationwide Class.

206.    Apple concealed and suppressed material facts concerning the quality of the Class Laptops, and the Keyboards in the Class Laptops.

207.    Apple concealed and suppressed material facts concerning the serious Defect causing Class Laptops to manifest the Keyboard Defect. Upon information and belief, the Defect is latent and lies in the internal mechanisms of the Class Laptops' Keyboards. Apple knew that Plaintiff and Class Members would not be able to inspect or otherwise detect the Defect prior to purchasing the Laptops. Apple furthered and relied upon this lack of disclosure to promote payments for temporary "fixes"—all the while concealing the true nature of cause and Defect from Plaintiff and Class Members.

208.    Apple concealed and suppressed material facts that point to the nature of the Defect being a faulty Keyboard design, and instead pushed temporary "fixes" like compressed air and Keyboard replacements costing up to $700.

209.    Apple did so in order to boost confidence in its Laptops and falsely assure purchasers of Apple Laptops, that the Class Laptops were durable, reliable, precise, and suitable for professional use, and concealed the information in order to prevent harm to Apple and its products' reputations in the marketplace and to prevent consumers from learning of the defective nature of the Class Laptops prior to their purchase or lease. These false representations and omissions were material to consumers, both

because they concerned the quality of the Class Laptops and because the representations and omissions played a significant role in their decisions to purchase or lease the Class Laptops.

210.     Apple had a duty to disclose the Keyboard Defect in the Class Laptops because it was known and/or accessible only to Apple; Apple had superior knowledge and access to the facts; and Apple knew the facts were not known to or reasonably discoverable by Plaintiff and Class Members.

211.     Apple also had a duty to disclose because it made many general affirmative representations about the quality, warranty, and lack of defects in the Class Laptops as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, comfort, and usability. Even when faced with complaints regarding the Defect, Apple misled and concealed the true cause of the symptoms complained of. As a result, Class Members were misled as to the true condition of the Class Laptops once at the time of purchase and again when the Defect was complained of to Apple. The omitted and concealed facts were material because they directly impact the value, appeal, and usability of the Class Laptops purchased by Plaintiff and Class Members. Whether a manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose for which they were purchased, are material concerns to a consumer.

212.     Apple actively concealed and/or suppressed these material facts, in whole or in part, to protect its reputation, sustain its marketing strategy, and avoid recalls that would affect the brand's image and cost money, and it did so at the expense of Plaintiff and Class Members.

213.     On information and belief, Apple has still not made full and adequate disclosure and continues to mislead Plaintiff and Class Members and conceal material information regarding defects that exist in Apple Laptops.

214.     Plaintiff and Class Members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed or suppressed facts, in that they would not have purchased laptops designed and manufactured by Apple or chosen different models not known to possess the Keyboard Defect. Plaintiff and Class Members' actions were justified. Apple was in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or Class Members.

215.    Because of the concealment and/or suppression of the facts, Plaintiff and Class Members sustained damages because they paid value for the Class Laptops not aware of the Keyboard Defect that Apple failed to disclose, and they paid for warranty extensions, temporary repairs, and parts to attempt to remedy the Defect. Had they been aware of the concealed Defect that existed in the Class Laptops, Plaintiff and Class Members would have paid less for their Laptops or would not have purchased them at all.

216.    Accordingly, Apple is liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

217.    Apple's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff' and Class Members' rights and well-being to enrich Apple. Apple's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## ELEVENTH CAUSE OF ACTION
### Unjust Enrichment

218.    Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

219.    Apple has been unjustly enriched by Plaintiff and Class Members purchasing Class Laptops from Apple and purchasing replacement parts and services from Apple that Plaintiff and Class Members would not have purchased but for Apple's misconduct alleged above with respect to the Keyboard Defect

220.    Plaintiff and Class Members unknowingly conferred a benefit On Apple of which Apple had knowledge, since Apple was aware of the defective nature of the Class Laptops' Keyboard Defect and the resultant performance problems but failed to disclose this knowledge and misled Plaintiff and Class Members regarding the nature and quality of the Class Laptops while profiting from this deception.

221.    The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Apple to retain the benefit of profits that it unfairly obtained from Plaintiff and Class Members. These profits include the premium price Plaintiff and the Class paid for the Class Laptops and the cost

of the parts, services, and extended warranties bought from Apple to temporarily alleviate the Keyboard Defect.

222.    Plaintiff and Class Members, having been damaged by Apple's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Apple to their detriment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests of this Court the following relief, on behalf of himself and the proposed Classes:

   a.   an order certifying the proposed Classes, designating Plaintiff as named representative of the Classes, and designating the undersigned as Class Counsel;

   b.   a declaration that the Keyboards are defective;

   c.   a declaration that Apple is financially responsible for the notifying all Class Members about the defective nature of the Class Laptops;

   d.   an order enjoining Apple from further deceptive distribution and sales practices with respect to the Class Laptops, and to permanently repair the Class Laptops so that they no longer possess the Keyboard Defect;

   e.   an award to Plaintiff and Class Members of compensatory, exemplary, and statutory damages (except as expressly disclaimed herein), including interest, in an amount to be proven at trial;

   f.   a declaration that Apple must disgorge, for the benefit of Plaintiff and the Class Members, all or part of the ill-gotten profits it received from the sale of the Class Laptops, or make full restitution to Plaintiff and the Class;

   g.   an award of attorneys' fees and costs, under Cal. Code Civ. Proc. § 1021.5, and as otherwise allowed by law;

   h.   an award of pre-judgment and post-judgment interest;

   i.   leave to amend this Complaint to conform to the evidence produced at trial; and

   j.   such other and further relief as the Court may deem appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

223.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

DATED: June 14, 2018

Respectfully submitted,

By: /s/ Esfand Nafisi

MIGLIACCIO & RATHOD LLP
Nicholas Migliaccio*
Jason Rathod*
Esfand Y. Nafisi (SBN 320119)
388 Market Street
Suite 1300
San Francisco, CA 94111
Telephone: (415) 489-7004
Facsimile: (202) 800-2730
nmigliaccio@classlawdc.com
jrathod@classlawdc.com
enafisi@classlawdc.com

*pro hac vice application forthcoming

*Attorneys for Plaintiff*